**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **RAPID COMPLETIONS LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BAKER HUGHES INCORPORATED,** | § | Civil Action No. 6:16-cv-286 |
| **BAKER HUGHES OILFIELD** | § | |
| **OPERATIONS, INC., WEATHERFORD** | § | |
| **INTERNATIONAL, LLC,** | § | **JURY TRIAL DEMANDED** |
| **WEATHERFORD/LAMB, INC.,** | § | |
| **WEATHERFORD U.S., L.P.,** | § | |
| **WEATHERFORD ARTIFICIAL LIFT** | § | |
| **SYSTEMS, LLC, and PEAK** | § | |
| **COMPLETION TECHNOLOGIES,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Rapid Completions LLC files this Complaint against Defendants Baker Hughes Incorporated, Baker Hughes Oilfield Operations, Inc., (collectively, "Baker Hughes"), Weatherford International, LLC, Weatherford/Lamb, Inc., Weatherford U.S., L.P. and Weatherford Artificial Lift Systems, LLC (collectively, "Weatherford"), and Peak Completion Technologies, Inc. ("Peak") for patent infringement under 35 U.S.C. § 271 and allege, based on its own personal knowledge with respect to its own actions and based upon information and belief with respect to all others' actions, as follows:

**THE PARTIES**

1.    Plaintiff Rapid Completions LLC is a limited liability company organized and existing under the laws of the State of Texas, and maintains its principle place of business at 2400 Dallas Parkway, Suite 200, Plano, Texas 75093.

2.    Defendant Baker Hughes Incorporated is a Delaware corporation, and maintains its principle place of business at 2929 Allen Parkway, Suite 2100, Houston, Texas 77019. Baker Hughes Incorporated has designated CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

3.    Defendant Baker Hughes Oilfield Operations, Inc. is a Delaware corporation, and maintains its principle place of business at 2929 Allen Parkway, Suite 2100, Houston, Texas 77019.  Baker Hughes Oilfield Operations, Inc. has designated CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

4.    Weatherford U.S., L.P. is a Louisiana Limited partnership and maintains its principle place of business is 2000 St. James Place, Houston, TX  77056.  Weatherford U.S., L.P. has designated CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

5.    Weatherford Artificial Lift Systems LLC is a Delaware limited liability company and maintains its principle place of business is 2000 St. James Place, Houston, TX  77056. Weatherford Artificial Lift Systems, LLC has designated CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

6.    Defendant Weatherford International, LLC is a Delaware limited liability company, and maintains its principle place of business at 2000 St. James Place, Houston, Texas 77056. Weatherford International, LLC has designated CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

7.      Defendant Weatherford/Lamb, Inc. is a Delaware corporation, and maintains its principle place of business at 2000 St. James Place, Houston, Texas 77056.  Weatherford/Lamb, Inc. has designated CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

8.      Defendant Peak Completion Technologies, Inc. is a Texas corporation and maintains its principle place of business at 7710 Hwy. 80 West, Midland, Texas 79706.  Peak Completion Technologies, Inc. has designated Timothy W. Johnson, 700 Louisiana St., Ste. 4900, Houston, TX 77002 as its agent for service of process.

## JURISDICTION AND VENUE

9.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has personal jurisdiction over Baker Hughes, Weatherford, and Peak (collectively, "Defendants").

11.     Defendants conduct business and have committed acts of patent infringement, induced acts of patent infringement by others, contributed to patent infringement by others, and/or advertised infringing products in this district, the State of Texas, and in the United States.

12.     On information and belief, Defendants each operate at least one office in this district.

13.     On information and belief, Baker Hughes, Weatherford, and Peak transport infringing products, and or products used to contribute to the infringement of others throughout this district, and/or they place those products in the stream of commerce with the expectation that they may be sold, offered for sale, or sold in this forum.

14.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, among other things, Defendants are subject to personal jurisdiction in this district,

Defendants have regularly conducted business in this judicial district, and certain of the acts complained of herein occurred in this judicial district.

## PATENT-IN-SUIT

15.     The United States Patent and Trademark Office ("PTO") duly and legally issued U.S. Patent No. 9,303,501 ("the '501 Patent" or "the Patent-in-Suit").  Attached as Exhibit A.

16.     Rapid Completions is the exclusive licensee for the Patent-in-Suit and possesses all rights of recovery.

17.     Rapid Completions incorporates the Patent-in-Suit herein by reference.

## FACTUAL ALLEGATIONS

18.     The Patent-in-Suit generally covers methods and apparatuses for oil and gas wellbore fluid treatments.   It describes, inter alia, various packers for sealing portions of the wellbore and sliding sleeves, which can be opened or closed to control fluid movement into and out of a tubing string placed in the wellbore.

19.     The Patent-in-Suit also describes various methods for employing these tools in order to fracture formations and increase oil and gas production.  The Patent-in-Suit describes, inter alia, isolating portions of the wellbore using packers or other isolation methods, and then opening one or more sliding sleeves using a ball or other opening device to selectively fracture a portion of a formation ("Sliding Sleeve Fracking Methods").

20.     The Patent-in-Suit were initially developed and owned by Packers Plus Energy Services Inc. ("Packers Plus").

21.     Packers Plus has in the past and currently makes and sells tools and sells and performs services that practice one or more claims of the Patent-in-Suit.

22.     Packers Plus patents have been mentioned in news articles relating to Packers Plus and its efforts to protect its intellectual property.

23.   In the early 2000s, former Packers Plus employees Ray Hofman, Leon McIntosh, and Sloane Muscroft left Packers Plus and began working for Peak.

24.   On information and belief, Messrs. Hofman, McIntosh, and Muscroft were aware and/or should have been aware of Packers Plus patents, patent applications, and/or efforts to patent the technology described in the Patent-in-Suit.

25.   The Patent-in-Suit is also available over the Internet through various online resources such as the U.S. Patent Office website.

26.   One or more of the Patent-in-Suit and/or patents related to the Patent-in-Suit were cited as prior art during the prosecution of at least Baker Hughes' U.S. Patent Nos. 7,325,617; 7,395,856; 7,552,779; 7,650,941; 7,681,645; 7,870,902; 8,613,321; 8,695,716; 8,739,408; 8,770,299; 8,939,222; 8,940,841; 8,944,167; 8,955,603; 9,038,656; US20110187062; WO2012145506.

27.   One or more of the Patent-in-Suit and/or patents related to the Patent-in-Suit were cited as prior art during the prosecution of at least Weatherford's U.S. Patent Nos. 7,114,558; 8,215,411; 8,245,782; 8,245,788; 8,403,068; 8,505,639; 8,522,936; 8,714,272; 8,893,810; US20040129421.

28.   One or more of the Patent-in-Suit and/or patents related to the Patent-in-Suit were cited as prior art during the prosecution of at least Peak's U.S. Patent Nos. 7,267,172; 7,926,571; US20130068475.

29.   Baker Hughes makes, uses, sells, and offers for sale in the United States downhole tools, packers, sliding sleeves and balls that are used to perform ball drop sliding sleeve fracturing, including: FracPoint, FracPoint EX, FracPoint EX-C, FracPoint Cemented MP Sleeves, FracPoint MP Sleeves, FracPoint MP Sleeves with DirectConnect Ports,

EXPress frac sleeves, EX frac sleeves, DirectStim sleeves, P-Sleeves, Alpha Sleeves, Toe Sleeves, REPacker, IN-Tallic Frac Balls, FracSur, FracSur EX, DirectStim, tubing strings comprising H809150001, H409368301, 10314025, H80949-5638RD5K, H80949-563BUT5K, H80949-563BUT10K, H80949-563BUT8K, H80987-5638RD8K, H80987-5638RD10K, H409360021, H409360008, H40940-20FT, H304070001, H301920224, H301920118, H301920157, H301920223, H301920260, H301920171, H301920170, H301920213, H301920232, H301920211, H301920188, H301920111, H301870016, H301874524, H301870162, H301870116, H301870143, H301870118, H301870103, H301870185 ("Accused Baker Hughes Products").  Baker Hughes also makes, uses, sells, and offers for sale in the United States services that employ these and/or similar tools to fracture stimulate formations marketed under various names such as FracPoint, FracSur EX, FracPoint EX-C, and DirectStim ("Accused Baker Hughes Services"). (Collectively, the "Accused Baker Hughes Products and Services").

30.     Weatherford makes, uses, sells, and offers for sale in the United States downhole tools, packers, sliding sleeves and balls that are used to perform ball drop sliding sleeve fracturing, including: ZoneSelect, ZoneSelect sleeves, Monobore sleeve, SingleShot sleeve, MultiShift sleeve, MultiShift Frac Sliding Sleeve, toe sleeve, rupture disk, i-ball, i-ball sleeve, i-ball Multi-zone Fracturing Sleeve, MASS sleeve, Multi-Array Stimulation Sleeve, Stimulation Ball, ZoneSelect Completion System Stimulation Ball, SingleShot Stimulation Ball, SingleShot XLC Stimulation Ball, SingleShot XL Stimulation Ball, SingleShot Q Stimulation Ball, ZoneFrac, Morphisis, Genisis, SwellCat, Fraxis, Fraxsis, ComboFrac, Ares, Ares II, CSI Packer, ROKANKOR, ZoneSelect System, ZoneSelect Open hole, ZoneSelect Completion System, Monobor Frac System, ZoneSelect

Monobore Frac System, ZoneSelect SingleShot Frac System, ZoneSelect MultiShift Frac System, ZoneSelect Cluster Completion, i-ball system, ZoneSelect i-ball Multi-Zone Fracturing System, Multi-Array Stimulation Sleeve System, MASS System ("Accused Weatherford Products").  Weatherford also makes, uses, sells, and offers for sale in the United States services that employ these and/or similar tools to fracture stimulate formations marketed under various names such as ZoneSelect System, ZoneSelect Open hole, ZoneSelect Completion System, Monobor Frac System, ZoneSelect Monobore Frac System, ZoneSelect SingleShot Frac System, ZoneSelect MultiShift Frac System, ZoneSelect Cluster Completion, i-ball system, ZoneSelect i-ball Multi-Zone Fracturing System, Multi-Array Stimulation Sleeve System, MASS System ("Accused Weatherford Services").  (Collectively, the "Accused Weatherford Products and Services").

31.  Peak makes, uses, sells, and offers for sale in the United States downhole tools, packers, sliding sleeves and balls that are used to perform ball drop sliding sleeve fracturing, including: Multi-Stage Frac System, Predator Extreme Service Openhole Multistage Completion System, Predator Openhole System, Expandable Sleeve System, Expandable Frac System, Peak Completion IsoPort selective fracturing system, StrataPort, StrataPort II, StrataPort III, EZ-Port, SuperPort, Impact, Expandable, Cluster Frac Sleeve, IsoPort CS, HydroPort, Toe Initiation Sleeve, Trigger TS, Trigger TS Gen II, Impulse Sleeve, Predator, Predator II, SwellShark, MonoPak, Guardian, Perma-Pak, Dual Bore Perma-Pak, Strata-Pak, X-Series, X-Lite, X-Carbon, Fantom, F1 Fantom, F-2 Fantom, F-3 Fantom ("Accused Peak Products").  Peak also makes, uses, sells, and offers for sale in the United States services that employ these and/or similar tools to fracture stimulate formations marketed under various names such as Multi-Stage Frac System, Predator

Extreme Service Openhole Multistage Completion System, Predator Openhole System, Expandable Sleeve System, Expandable Frac System, Peak Completion IsoPort selective fracturing system ("Accused Peak Services"). (Collectively, the "Accused Peak Products and Services").

32. Baker Hughes and Weatherford also provide pumping services for fracture jobs.

33. On information and belief, Peak does not provide pumping fracture services. Instead it relies on others, such as Baker Hughes and Weatherford, to provide pumping services for wells where it supplies Accused Peak Products and Services.

34. At least to the extent Baker Hughes or Weatherford provide pumping services for Accused Peak Products and Services, those actions arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process.

35. Operators and/or well owners can use the Accused Baker Hughes Products and Services, the Accused Weatherford Products and Services, and the Accused Peak Products and Services to perform Sliding Sleeve Fracking Methods.

36. Baker Hughes has committed and continues to commit acts of infringement under 35 U.S.C. § 271 by making, using, offering for sale and/or selling the Accused Baker Hughes Products and Services.

37. Weatherford has committed and continues to commit acts of infringement under 35 U.S.C. § 271 by making, using, offering for sale and/or selling the Accused Weatherford Products and Services.

38.     Peak has committed and continues to commit acts of infringement under 35 U.S.C. § 271 by making, using, offering for sale and/or selling the Accused Peak Products and Services.

39.     Questions of fact common to all defendants will arise in the action.

**COUNT ONE: PATENT INFRINGEMENT BY BAKER HUGHES**

40.     Rapid Completions incorporates by reference the preceding paragraphs as if fully set forth herein.

41.     As described below, Baker Hughes has infringed and continues to infringe the Patent-in-Suit.

42.     The Accused Baker Hughes Products and Services meet one or more claims of the Patent-in-Suit.

43.     Baker Hughes makes, uses, offers to sell, sells and/or imports the Accused Baker Hughes Products and Services within the United States or into the United States without authority from Plaintiff.

44.     Baker Hughes installs tubing strings that include multiple sliding sleeves and multiple packers, including solid body packers, in non-vertical sections of an open hole wellbore.

45.     Baker Hughes sets multiple installed packers that divide the openhole section of the wellbore into annular wellbore segments (stages) containing sliding sleeves.

46.     Baker Hughes increases fluid pressure in the tubing string to set the packers.

47.     Baker Hughes further increases fluid pressure in the tubing string to open a pressure activated sliding sleeve, including a pressure activated sliding sleeve with a fluid actuated piston that is secured by a shear pin at the toe of the tubing string by increasing the pressure to shear the shear pin.

48.     Baker Hughes pumps fracturing fluid through the open port position to fracture a
hydrocarbon containing formation.

49.     Baker Hughes drops a frac ball into an installed tubing string to open a first sliding sleeve
and/or multiple sliding sleeves.

50.     Baker Hughes drops one or more additional frac balls into an installed tubing string to
open one or more additional sliding sleeves.

51.     Baker Hughes fracture stimulates stages through opened sleeves.

52.     Baker Hughes therefore infringes the Patent-in-Suit under 35 U.S.C. § 271(a).

53.     Baker Hughes indirectly infringes the Patent-in-Suit by inducing infringement by others,
such as its customers and well owners and operators that perform Sliding Sleeve Fracking
Methods with the Accused Baker Hughes Services.  For example, by instructing and
encouraging its customers to perform infringing methods using Accused Baker Hughes
Products.

54.     Baker Hughes further instructs operators and/or well owners how to use such products
and services in a manner that infringes the Patent-in-Suit (e.g., through technical
documentation, instruction, and technical support).

55.     Baker Hughes takes the above actions intending others to infringe.

56.     Baker Hughes induces operators and/or well owners to install tubing strings that include
multiple sliding sleeves.

57.     Baker Hughes induces operators and/or well owners to install tubing strings that include
multiple sliding sleeves and multiple packers, including packers with multiple, spaced
apart packing elements.

58.   Baker Hughes induces operators and/or well owners to install tubing strings that include multiple sliding sleeves and multiple packers, including solid body packers, in non-vertical sections of an open hole wellbore.

59.   Baker Hughes induces operators and/or well owners to set multiple installed packers that divide the openhole section of the wellbore into annular wellbore segments containing sliding sleeves.

60.   Baker Hughes induces operators and/or well owners to increase fluid pressure in the tubing string to set the packers.

61.   Baker Hughes induces operators and/or well owners to further increase fluid pressure in the tubing string to open a pressure activated sliding sleeve, including a pressure activated sliding sleeve with a fluid actuated piston that is secured by a shear pin at the toe of the tubing string by increasing the pressure to shear the shear pin.

62.   Baker Hughes induces operators and/or well owners to pump fracturing fluid through the open port position to fracture a hydrocarbon containing formation.

63.   Baker Hughes induces operators and/or well owners to drop a frac ball into an installed tubing string to open a first sliding sleeve and/or multiple sliding sleeves.

64.   Baker Hughes induces operators and/or well owners to drop one or more additional frac balls into an installed tubing string to open one or more additional sliding sleeves.

65.   Baker Hughes induces operators and/or well owners to fracture stimulate stages through opened sleeves.

66.   Baker Hughes has actual knowledge of the Patent-in-Suit and knows that the others' actions, if taken, would constitute infringement of that patent.   Alternatively, Baker Hughes believes there is a high probability that others would infringe the Patent-in-Suit

but has remained willfully blind to the infringing nature of others' actions. Baker Hughes

therefore infringes the Patent-in-Suit under 35 U.S.C. § 271(b).

67. Baker Hughes indirectly infringes the Patent-in-Suit by contributing to infringement by

others, such as its customers and well owners and operators by making, using, importing,

offering to sell and/or selling within the United States products that contain components

that constitute a material part of the inventions claimed in the Patent-in-Suit, and

components of products that are used to practice one or more processes/methods covered

by the claims of the Patent-in-Suit and that constitute a material part of the inventions

claimed in the Patent-in-Suit. Such components are, for example, the Accused Baker

Hughes Products that are capable of being used for Sliding Sleeve Fracturing Methods.

68. In the above offering to sell and/or selling, Baker Hughes knows these components to be

especially made or especially adapted for use in an infringement of the Patent-in-Suit and

that these components are not a staple article or commodity of commerce suitable for

substantial non-infringing use. Alternatively, Baker Hughes believes there is a high

probability that others would infringe the Patent-in-Suit but has remained willfully blind

to the infringing nature of others' actions. Baker Hughes therefore infringes the Patent-in-

Suit under 35 U.S.C. § 271(c).

69. Baker Hughes's acts of infringement have caused damage to Rapid Completions. Rapid

Completions is entitled to recover from Baker Hughes the damages sustained by Rapid

Completions as a result of Baker Hughes's wrongful acts in an amount subject to proof at

trial. In addition, the infringing acts and practices of Baker Hughes have caused, are

causing, and, unless such acts and practices are enjoined by the Court, will continue to

cause immediate and irreparable harm to Rapid Completions for which there is no

adequate remedy at law, and for which Rapid Completions is entitled to injunctive relief under 35 U.S.C. § 283.

70.     To the extent that Baker Hughes releases any new model, version, or revision of the Accused Baker Hughes Products and Services, such instrumentalities meet claims of the Patent-in-Suit and infringe under 35 U.S.C. § 271(a)-(c) in ways analogous to Baker Hughes's current infringement described above.

## COUNT TWO: PATENT INFRINGEMENT BY WEATHERFORD

71.     Rapid Completions incorporates by reference the preceding paragraphs as if fully set forth herein.

72.     As described below, Weatherford has infringed and continues to infringe the Patent-in-Suit.

73.     The Accused Weatherford Products and Services meet one or more claims of the Patent-in-Suit.

74.     Weatherford makes, uses, offers to sell, sells and/or imports the Accused Weatherford Products and Services within the United States or into the United States without authority from Plaintiff.

75.     Weatherford installs tubing strings that include multiple sliding sleeves and multiple packers, including solid body packers, in non-vertical sections of an open hole wellbore.

76.     Weatherford sets multiple installed packers that divide the openhole section of the wellbore into annular wellbore segments (stages) containing sliding sleeves.

77.     Weatherford increases fluid pressure in the tubing string to set the packers.

78.     Weatherford further increases fluid pressure in the tubing string to open a pressure activated sliding sleeve, including a pressure activated sliding sleeve with a fluid actuated

piston that is secured by a shear pin at the toe of the tubing string by increasing the pressure to shear the shear pin.

79.     Weatherford pumps fracturing fluid through the open port position to fracture a hydrocarbon containing formation.

80.     Weatherford drops a frac ball into an installed tubing string to open a first sliding sleeve and/or multiple sliding sleeves.

81.     Weatherford drops one or more additional frac balls into an installed tubing string to open one or more additional sliding sleeves.

82.     Weatherford fracture stimulates stages through opened sleeves.

83.     Weatherford therefore infringes the Patent-in-Suit under 35 U.S.C. § 271(a).

84.     Weatherford indirectly infringes the Patent-in-Suit by inducing infringement by others, such as its customers and well owners and operators that perform Sliding Sleeve Fracking Methods with the Accused Weatherford Services.   For example, by instructing and encouraging its customers to perform infringing methods using Accused Weatherford Products.

85.     Weatherford further instructs operators and/or well owners how to use such products and services in a manner that infringes the Patent-in-Suit (e.g., through technical documentation, instruction, and technical support).

86.     Weatherford takes the above actions intending others to infringe.

87.     Weatherford induces operators and/or well owners to install tubing strings that include multiple sliding sleeves.

88.    Weatherford induces operators and/or well owners to install tubing strings that include multiple sliding sleeves and multiple packers, including packers with multiple, spaced apart packing elements.

89.    Weatherford induces operators and/or well owners to install tubing strings that include multiple sliding sleeves and multiple packers, including solid body packers, in non-vertical sections of an open hole wellbore.

90.    Weatherford induces operators and/or well owners to set multiple installed packers that divide the openhole section of the wellbore into annular wellbore segments containing sliding sleeves.

91.    Weatherford induces operators and/or well owners to increase fluid pressure in the tubing string to set the packers.

92.    Weatherford induces operators and/or well owners to further increase fluid pressure in the tubing string to open a pressure activated sliding sleeve, including a pressure activated sliding sleeve with a fluid actuated piston that is secured by a shear pin at the toe of the tubing string by increasing the pressure to shear the shear pin.

93.    Weatherford induces operators and/or well owners to pump fracturing fluid through the open port position to fracture a hydrocarbon containing formation.

94.    Weatherford induces operators and/or well owners to drop a frac ball into an installed tubing string to open a first sliding sleeve and/or multiple sliding sleeves.

95.    Weatherford induces operators and/or well owners to drop one or more additional frac balls into an installed tubing string to open one or more additional sliding sleeves.

96.    Weatherford induces operators and/or well owners to fracture stimulate stages through opened sleeves.

97.    Weatherford has actual knowledge of the Patent-in-Suit and knows that the others' actions, if taken, would constitute infringement of that patent.  Alternatively, Weatherford believes there is a high probability that others would infringe the Patent-in-Suit but has remained willfully blind to the infringing nature of others' actions. Weatherford therefore infringes the Patent-in-Suit under 35 U.S.C. § 271(b).

98.    Weatherford indirectly infringes the Patent-in-Suit by contributing to infringement by others, such as its customers and well owners and operators by making, using, importing, offering to sell and/or selling within the United States products that contain components that constitute a material part of the inventions claimed in the Patent-in-Suit, and components of products that are used to practice one or more processes/methods covered by the claims of the Patent-in-Suit and that constitute a material part of the inventions claimed in the Patent-in-Suit.  Such components are, for example, the Accused Weatherford Products that are capable of being used for Sliding Sleeve Fracturing Methods.

99.    In the above offering to sell and/or selling, Weatherford knows these components to be especially made or especially adapted for use in an infringement of the Patent-in-Suit and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, Weatherford believes there is a high probability that others would infringe the Patent-in-Suit but has remained willfully blind to the infringing nature of others' actions. Weatherford therefore infringes the Patent-in-Suit under 35 U.S.C. § 271(c).

100.   Weatherford's acts of infringement have caused damage to Rapid Completions.  Rapid Completions is entitled to recover from Weatherford the damages sustained by Rapid

Completions as a result of Weatherford's wrongful acts in an amount subject to proof at trial.   In addition, the infringing acts and practices of Weatherford have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Rapid Completions for which there is no adequate remedy at law, and for which Rapid Completions is entitled to injunctive relief under 35 U.S.C. § 283.

101. To the extent that Weatherford releases any new model, version, or revision of the Accused Weatherford Products and Services, such instrumentalities meet claims of the Patent-in-Suit and infringe under 35 U.S.C. § 271(a)-(c) in ways analogous to Weatherford's current infringement described above.

## COUNT THREE: PATENT INFRINGEMENT BY PEAK

102. Rapid Completions incorporates by reference the preceding paragraphs as if fully set forth herein.

103. As described below, Peak has infringed and continues to infringe the Patent-in-Suit.

104. The Accused Peak Products and Services meet one or more claims of the Patent-in-Suit.

105. Peak makes, uses, offers to sell, sells and/or imports the Accused Peak Products and Services within the United States or into the United States without authority from Plaintiff.

106. Peak installs tubing strings that include multiple sliding sleeves and multiple packers, including solid body packers, in non-vertical sections of an open hole wellbore.

107. Peak sets multiple installed packers that divide the openhole section of the wellbore into annular wellbore segments (stages) containing sliding sleeves.

108. Peak increases fluid pressure in the tubing string to set the packers.

109.   Peak further increases fluid pressure in the tubing string to open a pressure activated sliding sleeve, including a pressure activated sliding sleeve with a fluid actuated piston that is secured by a shear pin at the toe of the tubing string by increasing the pressure to shear the shear pin.

110.   Peak pumps fracturing fluid through the open port position to fracture a hydrocarbon containing formation.

111.   Peak drops a frac ball into an installed tubing string to open a first sliding sleeve and/or multiple sliding sleeves.

112.   Peak drops one or more additional frac balls into an installed tubing string to open one or more additional sliding sleeves.

113.   Peak fracture stimulates stages through opened sleeves.

114.   Peak therefore infringes the Patent-in-Suit under 35 U.S.C. § 271(a).

115.   Peak indirectly infringes the Patent-in-Suit by inducing infringement by others, such as its customers and well owners and operators that perform Sliding Sleeve Fracking Methods with the Accused Peak Services.  For example, by instructing and encouraging its customers to perform infringing methods using Accused Peak Products.

116.   Peak further instructs operators and/or well owners how to use such products and services in a manner that infringes the Patent-in-Suit (e.g., through technical documentation, instruction, and technical support).

117.   Peak takes the above actions intending others to infringe.

118.   Peak induces operators and/or well owners to install tubing strings that include multiple sliding sleeves.

119.   Peak induces operators and/or well owners to install tubing strings that include multiple sliding sleeves and multiple packers, including packers with multiple, spaced apart packing elements.

120.   Peak induces operators and/or well owners to install tubing strings that include multiple sliding sleeves and multiple packers, including solid body packers, in non-vertical sections of an open hole wellbore.

121.   Peak induces operators and/or well owners to set multiple installed packers that divide the openhole section of the wellbore into annular wellbore segments containing sliding sleeves.

122.   Peak induces operators and/or well owners to increase fluid pressure in the tubing string to set the packers.

123.   Peak induces operators and/or well owners to further increase fluid pressure in the tubing string to open a pressure activated sliding sleeve, including a pressure activated sliding sleeve with a fluid actuated piston that is secured by a shear pin at the toe of the tubing string by increasing the pressure to shear the shear pin.

124.   Peak induces operators and/or well owners to pump fracturing fluid through the open port position to fracture a hydrocarbon containing formation.

125.   Peak induces operators and/or well owners to drop a frac ball into an installed tubing string to open a first sliding sleeve and/or multiple sliding sleeves.

126.   Peak induces operators and/or well owners to drop one or more additional frac balls into an installed tubing string to open one or more additional sliding sleeves.

127.   Peak induces operators and/or well owners to fracture stimulate stages through opened sleeves.

128.   Peak has actual knowledge of the Patent-in-Suit and knows that the others' actions, if taken, would constitute infringement of that patent.  Alternatively, Peak believes there is a high probability that others would infringe the Patent-in-Suit but has remained willfully blind to the infringing nature of others' actions.  Peak therefore infringes the Patent-in-Suit under 35 U.S.C. § 271(b).

129.   Peak indirectly infringes the Patent-in-Suit by contributing to infringement by others, such as its customers and well owners and operators by making, using, importing, offering to sell and/or selling within the United States products that contain components that constitute a material part of the inventions claimed in the Patent-in-Suit, and components of products that are used to practice one or more processes/methods covered by the claims of the Patent-in-Suit and that constitute a material part of the inventions claimed in the Patent-in-Suit.  Such components are, for example, the Accused Peak Products that are capable of being used for Sliding Sleeve Fracturing Methods.

130.   In the above offering to sell and/or selling, Peak knows these components to be especially made or especially adapted for use in an infringement of the Patent-in-Suit and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, Peak believes there is a high probability that others would infringe the Patent-in-Suit but has remained willfully blind to the infringing nature of others' actions. Peak therefore infringes the Patent-in-Suit under 35 U.S.C. § 271(c).

131.   Peak's acts of infringement have caused damage to Rapid Completions.   Rapid Completions is entitled to recover from Peak the damages sustained by Rapid Completions as a result of Peak's wrongful acts in an amount subject to proof at trial.  In addition, the infringing acts and practices of Peak have caused, are causing, and, unless

such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Rapid Completions for which there is no adequate remedy at law, and for which Rapid Completions is entitled to injunctive relief under 35 U.S.C. § 283.

132.     To the extent that Peak releases any new model, version, or revision of the Accused Peak Products and Services, such instrumentalities meet claims of the Patent-in-Suit and infringe under 35 U.S.C. § 271(a)-(c) in ways analogous to Peak's current infringement described above.

## DEMAND FOR JURY TRIAL

Rapid Completions hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

1.  A judgment that Baker Hughes has directly infringed the Patent-in-Suit, contributorily infringed the Patent-in-Suit, and induced the infringement of the Patent-in-Suit;

2.  A judgment that Weatherford has directly infringed the Patent-in-Suit, contributorily infringed the Patent-in-Suit, and induced the infringement of the Patent-in-Suit;

3.  A judgment that Peak has directly infringed the Patent-in-Suit, contributorily infringed the Patent-in-Suit, and induced the infringement of the Patent-in-Suit;

4.  A permanent injunction preventing Defendants and their officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and inducing the infringement of the Patent-in-Suit;

5.  A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding to Rapid Completions its attorneys' fees incurred in prosecuting this action;

6.  A judgment and order requiring Defendants to pay Rapid Completions damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

7.  A judgment and order requiring Defendants to pay Rapid Completions the costs of this action (including all disbursements);

8.  A judgment and order requiring Defendants to pay Rapid Completions pre-judgment and post-judgment interest on the damages awarded;

9.  A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Rapid Completions be awarded a compulsory ongoing licensing fee; and

10. Such other and further relief as the Court may deem just and proper.

Dated:  April 5, 2016

Respectfully submitted,

**CALDWELL CASSADY & CURRY P.C.**

_____
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
Email: acurry@caldwellcc.com
Justin Nemunaitis
Texas State Bar No. 24065815
Email:  jnemunaitis@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

**ATTORNEYS FOR PLAINTIFF
RAPID COMPLETIONS LLC**